United States District Court
Southern District of Texas
**ENTERED**
August 26, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DONALD A.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-cv-1636** |
| | § | |
| **LELAND DUDEK,** | § | |
| | § | |
| **Defendant.** | § | |

# MEMORANDUM AND OPINION

Plaintiff Donald A. ("Plaintiff") filed this lawsuit against Defendant Frank Bisignano[1] ("Commissioner") seeking review of the denial of benefits under Title II and Title XVI of the Social Security Act. (ECF Nos. 1, 15). Pending before the Court[2] are the Parties' cross-motions for summary judgment. (ECF Nos. 15, 17). Based on a review of the motions, arguments, and relevant law, the Court **GRANTS** Commissioner's Motion for Summary Judgment (ECF No. 17) and **DENIES** Plaintiff's Motion for Summary

[1] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Bisignano is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The parties consented to proceed before a Magistrate Judge for all proceedings under 28 U.S.C. § 636(c). (ECF No. 8).

Judgment (ECF No. 15). The Court **FURTHER ORDERS** the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

## I. Background

Plaintiff filed a claim for disability insurance benefits and supplemental security income on September 9, 2020, alleging disability starting on January 1, 2003. (ECF No. 10-1 at 24).[3] Plaintiff's claims were initially denied by the Social Security Administration on March 8, 2021, and again on reconsideration on June 22, 2021. (*Id.*). On July 20, 2021, Plaintiff requested a hearing before an Administrative Law Judge. (*Id.*). On January 11, 2022, Administrative Law Judge Michelle Whetsel (the "ALJ") held a telephonic hearing, and an unfavorable decision was rendered on September 7, 2022. (*Id.*).

On January 20, 2023, the Appeals Council remanded Plaintiff's claim. (*Id.* at 232).[4]

On January 16, 2024, the ALJ held a telephonic hearing, and it was continued to January 25, 2024. (*Id.* at 25). Plaintiff was represented by counsel at the hearing. (*Id.*). Valerie Hill, a vocational expert ("VE"), appeared

[3] The Administrative Record in this case can be found at ECF No. 10.

[4] The Appeals Council remanded the matter because the ALJ's September 7, 2022 decision did not address whether Plaintiff's prior November 12, 2013 decision should be reopened, given that the alleged onset date in the current claim overlapped with the prior claim. (ECF No. 10-1 at 24–25). On remand, Plaintiff amended his alleged onset date to September 9, 2020, the filing date for his Title XVI claim, and withdrew his Title II claim. (*Id.* at 25). The ALJ therefore concluded that the prior decision did not need to be reopened and adjudicated only Plaintiff's Title XVI claim.

and testified at the hearing. (*Id.*). During the hearing, Plaintiff requested to withdraw his application for Title II benefits, which the Court granted. (*Id.*).

On March 4, 2024, the ALJ issued a decision, finding Plaintiff not disabled at Step Five.[5] (*Id.* at 36–37). At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 9, 2020, the alleged onset date. (*Id.* at 27). At Step Two, the ALJ found Plaintiff has the following severe impairments: "recurrent abdominal pain/gastritis/Crohn's disease, anxiety disorder/depression/bipolar disorder, degenerative disc disease of the lumbar spine, right shoulder disorder, and traumatic brain injury with residual deficits. (20 CFR 404.1520(c) and 416.920(c))." (*Id.* at 28). At Step Three, the ALJ found Plaintiff: "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.*). The ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to:

---

[5] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He can frequently reach in all directions, including overhead, with his right upper extremity. The claimant can occasionally push, pull, and operate foot controls, bilaterally. The claimant should avoid even moderate exposure to extreme heat, extreme cold, fumes, dusts, odors, gases, and poor ventilation. He should avoid all exposure to dangerous moving machinery and unprotected heights. The claimant should avoid concentrated exposure to wet, slippery, or uneven surfaces. The claimant can remember and follow detailed, but not complex instructions. He can perform the tasks assigned, but not always at production rate pace; however, he can meet end of the day work goals. The claimant can have occasional contact with coworkers, supervisors, and the general public. He can occasionally adapt to changes in the workplace.

(*Id.* at 29–30). At Step Four, the ALJ found Plaintiff "is unable to perform any past relevant work." (*Id.* at 35–36). At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform—such as a marker, garment sorter, and checker—and therefore Plaintiff was not disabled as defined under the Social Security Act. (*Id.* at 36–37).

Plaintiff appealed to the Appeals Council and the Appeals Council denied Plaintiff's request for review on February 28, 2025. (ECF No. 10-1 at 7). Thus, the ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

## II. Legal Standard

The Court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence

supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

## III. Discussion

Plaintiff argues the ALJ erred by failing to provide a reasonable basis for discrediting favorable medical opinion evidence from Physician Assistant ("PA") Patrick Klepler pursuant to 20 C.F.R. § 416.920c.[6] (ECF No. 15-1 at 4, 12–17). Although Plaintiff acknowledges the ALJ addressed PA Klepler's Mental Capacity Assessment from January 2022, Plaintiff argues the ALJ's "reasons for finding it unpersuasive were insufficient, and the ALJ erred by failing to perform the analysis that is required to evaluate medical opinion

[6] The parties at times refer to PA Klepler as "Klepfer;" however, the record evidence indicates his name is "Klepler." (*See, e.g.*, ECF No. 10-3 at 1271–74.). For consistency, the Court will refer to him as Klepler.

evidence set forth in 20 C.F.R. § 416.920c."[7] (*Id.* at 12). Commissioner argues the ALJ properly considered the opinion evidence provided in the record, including the findings of PA Klepler. (*See* ECF No. 17).

**A. § 416.920c Standard**

§ 416.920c sets forth how the ALJ considers and articulates medical opinions. Per the code, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from medical sources. *Id.* at § 416.920c(a). When a medical source provides one or more medical opinions, the ALJ must consider them together using the factors listed in paragraphs (c)(1) through (c)(5) of § 416.920c. *Id.* Those factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the medical opinion. *Id.* at § 416.920c(c)(1)–(5). The most "important factors" the ALJ must consider when they evaluate the persuasiveness of medical opinions are "supportability" and "consistency." *Id.* at § 416.920c(a).

The ALJ must further articulate how they considered the medical opinions according to paragraph (b) of § 416.920c. Under that paragraph, the

[7] The ALJ stated PA Klepler's assessment was from November 2022 (ECF No. 10-1 at 34); however, the record shows it was signed on January 10, 2022 (ECF No. 10-3 at 1271–74).

ALJ must articulate in their decision how "persuasive" they find all of the medical opinions. *Id.* at § 416.920c(b). When a medical source provides multiple medical opinion(s), the ALJ must articulate how they considered the medical opinions from that medical source together in a single analysis using the aforementioned factors listed in section (c). *Id.* at § 416.920c(b)(1). The ALJ is not required to articulate how they considered each medical opinion from one medical source individually. *Id.* Again, because the factors of "supportability" and "consistency" are the most important factors to consider when the ALJ determines how "persuasive" they find a medical source's medical opinions, they must explain how they considered those two factors for a medical source's medical opinions in their decision. *Id.* at § 416.920c(b)(2). The ALJ "*may*, but [is] *not required to*, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5) . . . when [they] articulate how [they] consider[ed] medical opinions . . . in [the] case record." *Id.* (emphasis added).

**B. The ALJ's Discussion of PA Klepler's Opinion**

PA Klepler completed the Mental Capacity Assessment to determine Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting. (ECF No. 10-3 at 1272). In each area of functioning, PA Klepler indicated the degree of limitation resulting from psychological factors, using the terms "none," "mild," "moderate," "marked," and "extreme." (*Id.*). "Marked" was defined as functioning that—independently, appropriately,

effectively, and on a sustained basis—was seriously limited. (*Id.*). "Extreme" was defined as not being able to function independently, appropriately, effectively, and on a sustained basis. (*Id.*). The ALJ noted PA Klepler opined Plaintiff had an extreme limitation in the ability "to set realistic goals" and "to make plans independently of others." (ECF No. 10-1 at 35; ECF No. 10-3 at 1273). The ALJ noted PA Klepler opined Plaintiff had marked limitation in the ability "to adapt to changes," "to manage psychologically based symptoms," "to handle conflicts with others," and "to understand and respond to social cues." (ECF No. 10-1 at 35; ECF No. 10-3 at 1273–1274). The ALJ also noted PA Klepler stated Plaintiff "has been dependent on others for living arrangements and financial matters as long as I have known him."[8] (ECF No. 10-1 at 35; ECF No. 10-3 at 1274).

The ALJ found the opinion "only somewhat persuasive." (ECF No. 10-1 at 35). The ALJ reasoned that although portions of PA Kepler's opinion indicating Plaintiff has limitations in the four B criteria were consistent with the evidence of record, the "marked" limitations were not.[9] (*Id.*). The ALJ explained these "marked" limitations were not supported because Plaintiff

---

[8] According to Plaintiff, he had seen PA Klepler since at least 2019. (ECF No. 15-1 at 6).

[9] *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00(B), (E) (identifying the four "paragraph B" criteria for mental impairments: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself).

"interacts with various medical providers, his representative for this claim, his mother, and some social service agencies. He has been able to procure a gold card for medical care and seek treatment when needed and he has maintained psychiatric treatment for an extended period." (*Id.*). The ALJ additionally explained that the record "establishes that upon exams [Plaintiff] appears to be in good health with fair grooming and hygiene, with no psychomotor activity restlessness or fidgeting us [sic] or slowing or rigidity." (*Id.*). The ALJ further explained "the exams routinely note [Plaintiff] with a euthymic mood and appropriate affect and demonstrating good insight and judgment as well as good impulse control, with no motor or sensory deficit." (*Id.*). The ALJ also noted "the opinion does not indicate any direct observations or exam results from which the provider relied on to reach his opinion. And . . . most exams indicate generally normal findings." (*Id.*).

The ALJ further reasoned that "dependance on others for living arrangements and financial matters would seem inconsistent with not being able to interact with others." (*Id.*). The ALJ therefore concluded:

> Consequently, the overall evidence of record is most consistent with [Plaintiff] being able to remember and follow detailed, but not complex instructions, performing the tasks assigned but not at a production rate pace while still being able to meet the end of day work goals, occasionally interacting with coworkers, supervisors, and the general public, and being able to occasionally adapt to changes in the workplace.

(*Id.*). The ALJ thus formulated the Plaintiff's RFC and found it "reasonably accommodates [Plaintiff's] statements and observations from treating and examining source, objective medical evidence of subjective complaints as supported by the record." (*Id.*).

Plaintiff takes issue with this assessment because "the ALJ appears to view Plaintiff's ability to obtain and maintain consistent medical treatment during the relevant period as evidence weighing against the persuasiveness of Mr. Klepler's opinion." (ECF No. 15-1 at 14). Plaintiff argues that the "ALJ effectively penalizes him for doing exactly what the regulations encourage – seeking and maintaining care" and that the regulations contemplate sustained treatment for mental impairments, which go hand-in-hand with "longitudinal evidence" that support a medical opinion's persuasiveness. (*Id.* at 14–15). Plaintiff also argues that his dependence on others for daily living functions and other record evidence further support the limitations identified in the opinion, pointing to reports from 2020 to 2022. (*Id.* at 15–16).

**C. Analysis**

While perhaps not perfect, the ALJ sufficiently articulated the supportability and consistency of PA Klepler's medical opinion when evaluating its persuasiveness.

As mentioned, the "most important factors" considered when the ALJ evaluates the persuasiveness of medical opinions are "supportability" and

"consistency." 20 C.F.R. § 404.1520c. For supportability, the more relevant the objective medical evidence and supporting explanations (presented by a medical source) are to support his medical opinion, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(1). For consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. *Id.* at § 404.1520c(c)(2). "In other words, 'supportability looks internally to the bases presented by the medical opinion itself' while 'consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals.'" *Morales v. Comm'r of Soc. Sec. Admin.*, No. 22-cv-00120, 2022 WL 18912157, at *3 (W.D. Tex. Dec. 5, 2022), *report and recommendation adopted sub nom. Morales v. Barnhart*, No. 22-cv-00120, 2023 WL 2626075 (W.D. Tex. Mar. 23, 2023) (citation omitted). "The ALJ's explanation of persuasiveness must 'enable[ ] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence.'" *Id.* (citation omitted).

In the January 2022 Mental Capacity Assessment, PA Klepler does not present objective medical evidence or supporting explanations to support his medical opinion. Indeed, the four sets of limitation-categories mirroring the four paragraph B criteria provided a section stating, "Describe the

medical/clinical findings that support this assessment," all of which were left blank. (*See* ECF No. 10-3 at 1272–74). The ALJ noted the same, saying "the opinion does not indicate any direct observations or exam results from which the provider relied on to reach his opinion." (ECF No. 10-1 at 35). In other words, there are no internal bases within the medical opinion to support PA Kepler's conclusions. *See Morales*, 2022 WL 18912157, at *3.

The ALJ also cited to other record evidence, from before and after the January 2022 assessment, that does not support and is inconsistent with the assessment. In December 2021, PA Klepler noted Plaintiff had fair grooming and hygiene, appeared in good health, showed normal motor activity, had normal speech and thought processes, appeared with euthymic mood with appropriate affect, had no hallucinations, delusions, paranoia, suicidal ideations, nor aggressive thoughts, and displayed good insight and judgment. (ECF No. 10-1 at 32; ECF No. 10-3 at 1329). In January 2022, PA Klepler reported similar examination findings, and no changes were made to Plaintiff's treatment regimen. (ECF No. 10-1 at 32; ECF No. 10-3 at 1327). Thereafter, in February and March 2022, although Plaintiff's visits were over the telephone, PA Klepler reported Plaintiff had normal speech and thought processes, good insight and judgment, and no psychotic or negative thoughts. (ECF No. 10-1 at 32; ECF No. 10-3 at 1321, 1323, 1325). During early 2022, Plaintiff's symptoms wax and waned, describing depression with

homelessness, isolated auditory hallucinations, and personal stress, but apparently reacting positively to increased Latuda medication and exhibiting lower, moderate anxiety. (ECF No. 10-1 at 32; ECF No. 10-3 at 1319, 1321, 1323, 1325).

As the ALJ thereafter observed:

> Consideration of the claimant's mental impairments, also fails to produce the degree of limitation alleged. The claimant's mental impairments have been relatively stable throughout the period under consideration. Mental status examinations have been normal, and he has only required a few adjustments to dosage of medication since 2020. He was homeless and experienced stress due to his lifestyle, which is reasonable given the circumstances. Nevertheless, he has not shown deterioration or decompensation of mental status. He engaged with medical providers as needed and no sources cited concerns regarding his ability to interact with others. He engaged in treatment planning and apparently interacted with social services of some type as he had a gold card, and he has a history of seeking disability benefits. It is further observed, he testified appropriately at the hearing and interacted appropriately in a telephone setting.

(ECF No. 10-1 at 33). It cannot be said that PA Klepler's January 2022 assessment was fully consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). As such, the ALJ did not err by finding that PA Klepler's marked-limitations conclusions were not consistent with the record and that his opinion was therefore "only somewhat persuasive." (ECF No. 10-1 at 35). *See Morales*, 2022 WL 18912157, at *3–4 ("The ALJ also cites to mental status notes from

other examinations by NP Gonzalez that a reasonable mind could find to be unsupportive of NP Gonzalez's March 2021 opinion.").

Additionally, even if there was any error in the ALJ's discussion of the consistency and supportability of PA Klepler's medical opinion, the Court concludes it is harmless. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) ("Courts may not reverse and remand for failure to comply with a *regulation* without first considering whether the error was *harmless*. . . . Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.") (emphasis in original) (citations omitted). The ALJ considered PA Klepler's other medical evidence in reviewing Plaintiff's mental impairments, and stated, "[i]n consideration of [Plaintiff's] mental impairments, he is reduced to performing detailed, but not complex activities and while he can perform the tasks assigned, he cannot always do so at a production rate pace; and he can occasionally adapt to rapid changes in the workplace." (ECF No. 10-1 at 33). The ALJ further limited him "to occasional interaction with others" because of his "preference for social withdrawal and the combined effects of his symptoms." (*Id.*). The court "may not reweigh the evidence" nor "substitute" its judgment for the Commissioner's." *Johnson*, 595 F. App'x at 444. Thus, under this record, the Court concludes the ALJ's decision is supported by substantial evidence.

## IV. Conclusion

Based on the foregoing, the Court **GRANTS** Commissioner's Motion for Summary Judgment (ECF No. 17) and **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 15). The Court **FURTHER ORDERS** the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

**SIGNED** in Houston, Texas on August 26, 2026.

Richard W. Bennett
United States Magistrate Judge